Good morning may it please the court my name is Rebecca Pannell appearing on behalf of Lucio Camarillo. We've raised two issues regarding warrants that resulted in a search of Mr. Camarillo's house. The validity of the wiretap and then a Frank's issue on whether or not there were misrepresentations in the search warrant. Unless the panel feels differently I'd like to address the second issue first I think it's a little bit more factually complicated and if you decide the second issue in our favor you wouldn't need to decide the Frank's issue. I think that fundamental question. My question is going to be about the Frank's issue and what you believe was omitted but I don't object to you addressing it in the order in which you plan to do so. Okay I'll make sure we get to that. I think the fundamental test with respect to a wiretap is if we allow a wiretap in this case are we going to allow it in all narcotics investigation cases? What about this case is special? And you can't just make conclusory statements and if you read through the affidavit in this case there's simply a lot of conclusory statements that the CIs were not able to get information from the Camarillo family so we wouldn't be able to. Well give me a specific instance of that. When were you ever at asking a question that was rejected? The Camarillo family was especially secretive. They were. The CI in this case was able to meet Lucio Camarillo Jr. who was believed to be the head of the organization. That seems to me to be a bit unusual. In more sophisticated organizations access is denied to the leaders. Surveillance in this case was able to follow the runners back to their homes. One of the runners who was met for the first time during the investigation which would tend to suggest that there may be new people in the organization. He was seen for the first time, Mr. McConaghy. They were able to successfully follow him from Bellevue to Tacoma. It doesn't seem like it was particularly difficult to investigate this drug operation. There were only four control buys. There was never a test. What is the legal standard for the issuance of the WARTAP? There must be a showing that this case is different from other cases. It's not a mine run case but there are unique obstacles in this case that make a WARTAP necessary. It's not simply a Fourth Amendment issue. It's a statutory issue. The fact there may be probable cause to believe there be conversations of help isn't good enough. The necessity requirement because of the invasiveness of WARTAPs has been thought to be an important one that we need to look at very closely. The magistrate judge who issues the WARTAP cannot simply rely on the expertise of the law enforcement agents but must be able to make his own evaluation. There's even been cases... How can the judge do that? The judge has before the judge the affidavit from the agent and is relying upon what the agent has put in the affidavit. So what would have to be presented to the magistrate judge so that that judge could independently decide? Right. I think some very specific facts and I think you also need to look at the fact that this court has said you can't just rely on past investigations and in this affidavit there's a lot about past investigations. There's a catch-22 because you have to talk about past investigations because you have to demonstrate that other methods have been tried and have failed to be adequate. So if you don't talk about any past investigations you can't get a WARTAP. Right. But you can't simply infer from past investigations either past investigations unrelated or this court has cases even with an ongoing investigation but investigation there was a case as to investigating I think was a gambling operation in Tucson versus California that even though the Tucson realm of it had special difficulties you had to show independently that the California affidavit was necessary. So you need to show very specific things with respect to this. The way you show necessity is by showing that the past investigations have been attempted in good faith and a number of other techniques have been used and they have been unavailing. So that's what was why wasn't that done here they talked about pen register various kinds of analysis they executed a number of search warrants they talked to a number of people there were numerous things that were done unsuccessfully and why doesn't that meet the statutory standard we've definitely held you don't have to do everything sure that's true I'm talking to people the investigators talking to people much of it was past investigations and they were sort of assuming that people from Lucio Camarillo jr.'s family were involved in this and that in this operation based on conclusory statements they talked to them based on past people who'd already done their prison sentence past cases not even part of this investigation so the fact that in those cases people didn't cooperate there were pen registers and they just said look pen registers aren't sufficient because they don't tell us the contents of conversations well this court has has decisions saying well of course they don't tell you the contents of decisions but that's not good enough the fact that you cannot ever know what people are saying over the phone unless you tap them is not the reason to get the wire tap before you run out of time I would also appreciate your turning to the issue which judge Marshall has some questions about yes the omission yeah what what was there that should have been in the affidavit that was not there what should the magistrate judge have been told the magistrate judge at the district court level that authorized a search warrant should have been told that during the longer investigation that led up to the wiretap they were believed that members of the conspiracy were not storing things at their homes they were not based upon the affidavit of Frederick yeah the Seattle affidavit those were two officers in the same office if you read both of them there's a lot of the same language clearly the two knew the officer writing the search warrant affidavit knew about the wiretap affidavit and and I assume that a part of your analysis is it's a two-month period between the affidavits being presented to the court but they were focusing on different things as we look at the language and I guess a cynic would say yes one wants the wiretap and one wants a search warrant so they're gonna focus on one's gonna say there's nothing and the other one's gonna say there's everything it's a classic case for Frank's hearing it's not to say that maybe the government could bring in their agents and they could explain why there's these differences why in two months early did they think there's not going to be drug evidence proceeds or documents in the houses they say that very explicitly and then they get a documentation so why in one time did they think there wasn't suspicious activity at any of the houses and yet based on the thin allegations that there were I believe five conversations where code words were used where there was no drug activity in you know prior to other arrests but no activity related to Lucio Camarillo jr. in Yakima at all in Yakima let alone at this residence and the people in the residence were under federal supervision Rodolfo Camarillo who lived there was under federal supervision subject to the normal conditions to just assume that there would be evidence in that house was thin if the Maastricht judge would have known that actually the expert agents investigating this case for a long time didn't think that this was a type of normal situation where people were storing things in their house I think that would have changed the analysis there should have at least been a Frank's to explain those differences what else was a minute opinion that the things that I identified as a minute were that the members of the conspiracy were not believed to store drugs drug evidence their homes or they were believed to stash houses or outside areas that the surveillance of the known conspirators homes did not indicate any unusual activity and that members of the conspiracy were not believed to keep written documentation of their activities there should at least been a hearing to explain why that was believed to be true on one occasion and not believed to be true a couple months later would you like to save your remaining minute and a half for a little thank you we'll hear from the government good morning may it please the court Alexander X from on behalf of the appellee United States of America why should not we require that Frank's hearing your honor because the ruling by the district court in its ruling indicated that the difference between the two affidavits separated by just slightly over two months was understandable because of the evolving nature of the investigation that is what's the standard of review for this court ray that finding clear error as to the finding of an omission and de novo as to its materiality and your honor simply by way of example if one takes a look at the the first claim omission it is that the the allegation is that based on the earlier 2008 Frederick's affidavit that the people who are part of the DTO tended not to store their homes if one looks particularly at excerpt of record 120 to 121 the the language is is couched a little bit more it says at this stage the use of a search warrant would not provide sufficient evidence to further the goals what what was what happened within that two-month period that would have changed that expression or that language just the wiretap the information from the wiretap the wiretap information was key in particular if one looks at one of the five calls Rodolfo Camarillo who has the driver's license that comes back to the shotgun Lane address is heard agreeing with the caller mr. Camarillo jr. to talk to the guy about the cargo in addition although not simply by way of example but not dealing with the shotgun residents the Biola address the other one a pole camera was put up and the app and the earlier wiretap affidavit indicates that officers will continue to use other methods in addition to the wiretap to build the probable cause and and and that's precisely what they did at page 65 let me make sure that I have that correctly of the later affidavit for by agent Trevino he discusses the fact that they are now going to go back to the same stash house the stash house that based on the earlier information they were unable to to develop probable cause for if the court recalls it was the unique nature of that stash house all the doors facing inward and having controlled access that based on the investigation to that point they didn't have probable cause so one of the questions and I know you're going to get there it's it is the probable cause for the search of the house so I'll let you complete your comments here but I'm troubled as to whether there was probable cause for the issuance of the search warrant I'll deal with the other two issues and get that expeditiously the other and again as to the idea that that the earlier affidavit indicated that folks weren't storing drugs in their residences that's belied by the content of the affidavit that a stash house was located with drugs that the rest of another individual revealed small amounts of drugs there there was a mention of an outdoor cache but the affidavit didn't explicitly say people weren't storing stuff in their homes simply that at this point the risks outweigh the benefits as to the issue of surveillance not revealing suspicious activity the the affidavit does at excerpt of record 16 say little or no suspicious activity but again the affidavit indicates that this is in process they haven't identified all the residences and finally the idea that the alleged omission regarding documents that the individuals were not believed to keep documents of the content of information and transactions reading that in context at excerpt of record 120 it's clear that what they're talking about is the contents of the meetings and so it's specifically addressing the wiretap as an ability to get beyond just who's calling who but rather the content as to probable cause the government does rely on angular Lopez and the inference that evidence is likely to be found where drug dealers live judge Shea in his ruling at excerpt of record 39 through 42 looks at the combination of factors Rodolfo Camarillo's two prior drug convictions his family the the prior arrest for the structuring and judge Shea's comment that that it's known that this can be a way to basically hide funds which are part of this and then in addition to the suspicious behavior again something as Gates versus Illinois tells us something that could be seen as characterized as harmless can in context be seen as suspicious in this case coming out of the residence to contact the agents can be deemed suspicious just asking the question what are you doing here so that's the suspicious activity that we're talking about that constitutes the counter surveillance it can be reasonably deemed to be counter surveillance by the agents everything has its context and so all taken together that could be reasonably seen to be counter surveillance and in addition the phone calls well there was there was much argument on that at the hearing and then judge Shea addresses that in his ruling indicating that the the common terms that are used in in particular because they are used in the dialect the use of the word Blanco the use of the word cargo the idea of the sale of girls and speaking and an agreement by Rodolfo Camarillo to go talk to the guy about the cargo again and this was the government's argument below that this shows not only a not just a familiarity with the words that are normally used but rather an agreement to take affirmative action on part of Rodolfo Camarillo showing that he is in fact a member of the organization is there anything in the record I didn't find it but maybe I just missed it that would indicate that both in this case the father defendant and Rodolfo on federal probation terms and conditions of supervised release search and seizure without consent there is nothing in there's nothing in the in fact the term of our supervised release is not used there in you address probable cause on the search warrant my my understanding of the search warrant argument presented by the defendant was focused on the omissions and but you accept the fact that ultimately they are arguing probable cause I had assumed probable cause would be an issue if one found the omissions material but I'm not sure whether the standalone probable cause sometimes when we argue in belt and suspenders your honor we get to spend a little more time in front of you explaining why we did it and in this instance it's because the government's view was that because as part of the materiality argument the defense attacks the nexus of the of the warrant underlying warrant and argues that it is weak on its face and that that's an aspect of materiality we felt we needed to address that and finally your honor says my time is running short dealing with necessity as pointed out in the excerpt of the record beginning on page 102 through 111 where the affiant in this case agent Frederick discusses the pen registers for prior searches which revealed small amounts of controlled substances and the arrests of individuals those arrests occurred at two separate periods of times there were there was the 2005 investigation dealing with many of the same individuals on the structuring and then also the arrest of the other other family member in 2008 where small amounts were found in addition to that there was surveillance and the difficulties with the surveillance were documented the confidential source essentially a customer near the bottom of the rung who was turned and used was used for for purchases along with the source of information for historical information regarding the organization but as opposed to the other cases cited by the general allegations and was essentially a spin-off of one wiretap which took necessity wholesale from the other one and changed a couple of names for other cases where there's just a pure failure to investigate in the first instance and an omission of that fact in this case is the government's contention that the agent in a fairly voluminous affidavit indicated the several steps that were unlikely to bear fruit simply by way of example the confidential source was able to make purchases through a runner but if the organization was only willing to sell the controlled substances through the runner the idea that this organization which had been subject to arrest on several occasions of over years would accept an outsider higher up in the chain the government would submit was it was a reasonable conclusion that this would not bear fruit thank you counsel your time has expired and miss Pennell you have some time left thank you your honor and the government says once the court to believe that certain ideas with respect to probable cause mean certain things but what I think the warrant affidavit requires is for that actually to be explained in the the language at this stage the government wants to read in to a lot that at this stage in the wiretap application the affiant said at this stage it wouldn't be fruitful and wants to review meeting in that council I had a question about whether your opening brief even raised that as a separate issue I understood your opening brief to raise two issues one the wiretap evidence was improperly gained and two that because of omissions there should have been a Frank's hearing or there should be suppression that's correct but I didn't really see you as raising a sort of freestanding probable cause argument assuming that you were wrong on the other two nonetheless there was no problem I didn't see that no I addressed it in a footnote I mean quite frankly I couldn't find any authority that wouldn't get us past a Leon exception regardless with respect to so I'm not misreading your brief in that regard okay but going to like I guess my point is the government wants to put a lot on the language in the wiretap affidavit that prefaces at this stage we do not believe that this information we found wants to explain to this court what that means when there should have been an evidentiary hearing with the agents coming in and explaining what that means by at this stage we don't believe we can require of an affiant is to put that in the record with respect to what can be in the record I would ask the court to look at the case of United States versus Ashley out of the First Circuit that I cited which that was a necessity case but it talks about very specific facts of obstacles not just assumptions that it would be difficult but very specific examples of obstacles thank you counsel thank you we appreciate the helpful arguments of both counsel the case is submitted
judges: Marshall, Graber, Fisher